IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |
|---|---|
| ISAAC BURTON TIGRETT, II and AUGUSTA KING TIGRETT, | ) ) ) |
| Plaintiffs/Counter-Defendants | ) ) |
| v. | ) )  Case No. 1:20-cv-1268-STA-jay |
| LLOYD DE VOS, | ) ) ) |
| Defendant/Counter-Plaintiff. | ) |

**ORDER GRANTING MOTION TO REMAND**

Before the Court is Plaintiffs, Isaac Burton Tigrett, II's and Augusta King Tigrett's, Motion to Remand (ECF No. 9.)  Defendant Lloyd De Vos has responded in opposition.  The briefing on Plaintiffs' Motion is now complete, and the Motion is ripe for determination.  For the reasons set forth below, Plaintiffs' Motion is **GRANTED**.

**BACKGROUND**

The underlying facts and procedural history of this case are largely undisputed.  This case involves the administration of two trusts.  Plaintiff Isaac Burton Tigrett, II is the primary beneficiary of the Isaac Burton Tigrett, II Trust, which was created under the Last Will and Testament of Frances T. Tigrett, Plaintiff's mother.  Plaintiff, Augusta King Tigrett is the primary beneficiary of the Irrevocable Trust Agreement for the Benefit of Augusta King Tigrett, which was created for her benefit by Frances T. Tigrett, her grandmother. Lloyd De Vos is trustee to both trusts.  This dispute arose out of Plaintiffs' concern that Defendant is failing to fulfill his duties pursuant to the trust documents and Tennessee law to provide the beneficiaries with timely

1

accountings and asset statements and to respond to their requests for information regarding the situs of the trusts. As set out in Plaintiffs' Motion to Remand, Plaintiffs originally filed this action in the Chancery Court of Tennessee for the Twenty-Sixth Judicial District at Madison County on November 3, 2020. Plaintiffs' Petition to Compel and to Declare Situs of Trusts requests that the Chancery Court compel Trustee, Lloyd De Vos, to provide accountings and financial information pertaining to the trusts pursuant to trust documents and Tenn. Code Ann. § 35-15-813. (ECF No. 1-2.) Plaintiffs also seek an order enjoining Defendant from moving the trust out of state, or, if Defendant has already moved the trusts, Plaintiffs seek an order declaring that such a move is invalid under Tennessee law. (*Id.*) In their prayer for relief, Plaintiffs request that the Chancery Court enter an order awarding Plaintiffs all of their fees, expenses, and costs related to this matter pursuant to Tenn. Code Ann. § 35-15-1004(a) and that the Court enter an order requiring Defendant to seek court review and approval of any legal fees, costs, and other expenses that he incurs relating to this lawsuit prior to payment or reimbursement with trust funds pursuant to Tenn. Code Ann. §§ 35-15-709, 1004. (*Id.*)

On December 9, 2020, Defendant removed the action to federal court pursuant to 28 U.S.C. § 1441, alleging that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (ECF No. 1.) In his Notice of Removal, Defendant states, with the concurrence of Plaintiffs, that this action is between citizens of different states. Plaintiff Isaac Burton Tigrett, II, is a citizen of Mississippi; Plaintiff Augusta King Tigrett is a citizen of California; and Defendant, Lloyd De Vos, is a citizen of New Jersey. Defendant contends that the the $75,000 amount-in-controversy requirement is satisfied, stating that the value of the Trusts each exceed $75,000. Furthermore, Defendant cites Plaintiffs' sought-for award of fees, expenses, and costs, in addition to Defendant's trustee fees, as contributing to exceeding the $75,000 threshold. Here, parties diverge.

Plaintiffs have responded with the instant Motion to Remand. They argue that this Court does not have jurisdiction over this case because the amount-in-controversy requirement is not met. Plaintiffs' complaint sets out the amount in controversy at the time of removal, which they claim is dispositive. They argue that the only monetary damages sought in the complaint are reimbursement of their fees, costs, and expenses relating to their action and that, at the time of removal, Plaintiffs' those amounted to $37,129.05. According to Plaintiffs, their request for accounting also does not satisfy the amount in controversy requirement because the cost of an accounting is conjectural at the point of remand and, even if the cost of accounting posited by Defendant is accepted, the overall amount in controversy still does not amount to $75,000. Further, the underlying value of the trusts cannot satisfy the jurisdictional threshold because neither the corpus of the trusts nor the beneficial ownership of the trusts is in controversy. Likewise, beneficiaries' request to declare the situs of the trusts does not affect the ownership of the trusts and so cannot place the entire value of the trusts in controversy. Finally, Plaintiffs assert that the *Princess Lida* doctrine and the Doctrines of Abstention and Probate Exception mandate remand.

Defendant has responded in a Response and Sur-Reply. Defendant contends that the amount-in-controversy does exceed $75,000, considering the probable value of the various forms of relief requested in the Complaint. First, Defendant argues that the value of the equitable accounting in question, at the time of removal, is $22,600. Defendant declares that he has himself spent "not less than twenty hours" in connection with the accounting, with a time value of $15,000 and that the overall value of the full process is "not less than $37,000. Next, Defendant argues that the "statutorily authorized attorney's fees to be incurred will, more likely than not, exceed $75,000. Given that, from the time their Complaint was removed to federal court, Plaintiff has accrued $37,129.05 in legal fees, and that Plaintiffs' attorneys have since filed a number of

3

pleadings, Plaintiffs will likely exceed the jurisdictional threshold throughout the course of the litigation. Defendant requests that, should the Court find that Defendant has not met his burden of proving that Plaintiffs' legal fees and expenses are more likely than not to exceed $75,000, the Court should order Plaintiffs' counsel to submit a third declaration showing all past and estimated future expenses related to this matter. Defendant further states that Plaintiffs seeking an injunction "to prohibit Defendant from charging accounting, Trustee, and his attorney fees to the Trust without Court approval," place those fees in dispute and they should therefore be considered in calculating the amount-in-controversy. Altogether, the value of attorney's fees, accounting, and Defendant's own trustee fees and expenses, Defendant argues, are more likely than not to add up to, at least, $75,000. The Court addresses these arguments in turn.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). Further, "removal statutes are to be strictly construed, and 'all doubts should be resolved against removal.'" *Mays v. City of Flint,* 871 F.3d 437, 442 (6th Cir. 2017) (quoting *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007) and citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006)). "This is because removal jurisdiction encroaches on state jurisdiction, and the interests of comity and federalism require that federal jurisdiction be exercised only when it is clearly established." *Holston v. Carolina Freight Carriers Corp.*, No. 90-1358, 1991 WL 112809, at *3 (6th Cir. June 26, 1991).

"When a plaintiff files a case in state court that could have been brought in a federal district court, a defendant may invoke the removal statute, 28 U.S.C. § 1441, to secure a federal forum." *Jarrett-Cooper v. United Airlines, Inc.*, 586 F. App'x 214, 215 (6th Cir. 2014) (quoting *Lincoln*

4

*Prop. Co. v. Roche,* 546 U.S. 81, 83 (2005)). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 518 (6th Cir. 2012) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Pursuant to 28 U.S.C. § 1332(a), federal diversity jurisdiction exists over "civil actions where the matter in controversy exceeds the sum or value of $75,000" and the parties are citizens of different states. 28 U.S.C. § 1332(a); *Fritz Dairy Farm, LLC v. Chesapeake Exploration, LLC*, 567 F. App'x 396, 398 (6th Cir. 2014). A defendant wishing to remove a case bears the burden of satisfying the amount-in-controversy requirement. *Gafford v. Gen. Elec. Co.,* 997 F.2d 150, 155 (6th Cir.1993). When the amount pled in the complaint does not explicitly meet the amount in controversy requirement, the defendant has the burden of proving that 'more likely than not,' by a preponderance of the evidence, this jurisdictional requirement has been met. *See* 28 U.S.C. § 1446(c)(2)(B); *Rogers v. Wal-Mart Stores Inc.*, 230 F.3d 868, 871 (6th Cir. 2001). To carry this burden, a defendant "must set forth, in the notice of removal, specific facts supporting the assertion that the amount in controversy exceeds the amount required by statute." *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 478 (6th Cir. 2014) (citations omitted). "While [defendant] need not show 'to a legal certainty that the amount in controversy met the federal requirement,' it must do more 'than show [ ] a mere possibility that the jurisdictional amount is satisfied.' " *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010). In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 456 (6th Cir. 1996).

"The traditional judicial interpretation ... has been ... that the separate and

distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). The Supreme Court recognizes a limited exception to this anti-aggregation principle for cases where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.* at 335, 89 S.Ct. 1053; *Everett v. Verizon Wireless, Inc.,* 460 F.3d 818, 822 (6th Cir.2006). *Siding & Insulation Co. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 369 (6th Cir. 2014).

## ANALYSIS

As a preliminary matter, before analyzing whether the jurisdictional amount-in-controversy has been met in this case, it is necessary to determine whether Plaintiffs' claims should be aggregated, as Defendant argues, or whether all or some of Plaintiffs' claims are separate and distinct.  The Court notes that neither Plaintiffs nor Defendant raised this issue, seeming to suggest that the indivisibility of Plaintiffs' claims is a foregone conclusion.  The Court is not convinced. As discussed above, the anti-aggregation principle is intended to prevent separate and distinct claims of two or more plaintiffs from being aggregated to satisfy the jurisdictional amount requirement.  The singular exception recognized by the Supreme Court is for cases where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder* 394 U.S. 332, 335, 89 S.Ct. 1053. The Sixth Circuit in *Siding & Insulation Co. v. Acuity Mut. Ins. Co.,* considered two principles, derived from sister circuit courts, to guide its anti-aggregation analysis. *Siding*, 754 F.3d 367, 369.  First, it examined a Fifth Circuit standard limiting aggregation to cases in which plaintiffs share a "joint interest in [a] fund, such that…plaintiffs' rights are…affected by the rights of co-plaintiffs." *See Travelers Prop. Cas. v. Good,* 689 F.3d 714 (7th Cir.2012) (quoting *Eagle Star Ins. Co. v. Maltes,* 313 F.2d 778, 781 (5th

6

Cir.1963). The Court also drew upon a Second Circuit case in which the court evaluated the "nature of the right asserted," delineating the relevant question as whether plaintiffs shared a "pre-existing (pre-litigation) interest in the subject of the litigation"—and not simply "whether successful vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs." *Travelers,* 689 F.3d at 722 (quoting *Gilman v. BHC Sec., Inc.,* 104 F.3d 1418, 1427 (2d Cir.1997)). These standards were endorsed in *Everrett v. Verizon Wireless* which clarified that a "common interest in a litigation recovery thus represents a necessary, but by itself insufficient, ground to qualify claims for aggregation." 460 F.3d 818, 824 (6th Cir. 2006) citing *Sturgeon v. Great Lakes Steel Corp.,* 143 F.2d 819, 821 (6th Cir.1944) ("Appellants are undertaking to marshal a common fund in which each of them and those on whose behalf they sue are interested, but this fact, standing alone, does not give the court jurisdiction" because "[t]he rights of the employees are not derived from the same or common title, but the interest of each in the dividend fund is based upon a separate and distinct contract each has with the insurer and the appellee-employer."). This common interest in litigation between plaintiffs manifests in "common fund cases," the paradigm of which consist of "claims to a piece of land, a trust fund, an estate, an insurance policy, a lien, or an item of collateral, which they claim as common owners or in which they share a common interest arising *under a single title or right*." (original emphasis). 460 F.3d 818, 824 *citing Gilman v. BHC Sec.,* 104 F.3d 1418, 1423 (2d Cir.1997) (Where "putative class [members] have no joint interest other than a shared appetite for a money judgment payable by a single defendant," they do not share "the type of 'common and undivided interest' that warrants an exception to the rule against aggregating claims.")

The instant case revolves around two distinct trusts of which the two Plaintiffs are sole beneficiaries of one each. Examining the trust instruments, it appears that the Isaac Burton Tigrett

II Trust lists the trustees of the Augusta King Tigrett Trust as the default beneficiary should Isaac Burton Tigrett, II die before all parts of the trust estate are effectively appointed. Therefore, Plaintiff Augusta King Tigrett, through her trust, arguably has an interest in both trusts. However, Isaac Burton Tigrett, II, does not similarly have an interest in the Augusta King Tigrett Trust. The Augusta King Tigrett Trust provides that, upon the death of the beneficiary, any part of the trust estate not effectively appointed by the beneficiary, "shall be distributed equally among Grantor's niece, Julia T. Pierce, and nephews, Hewitt P. Tomlin, III, and Dwight Tomlin, or their descendants." There is no reference to Isaac Burton Tigrett, II in the latter trust document or in the sections of Francis Tigrett's Last Will and Testament that reference the Augusta King Tigrett Trust. Therefore, although Augusta King Tigrett arguably has an interest, albeit a very attenuated one, in both trusts, Isaac Burton Tigrett, II cannot be said to share a common interest under a single title or right with his co-Plaintiff. Beyond having the same grantor and trustee, both plaintiffs are not identically postured, with different language governing their separate trusts, and with dissimilar interests in the respective trusts. Therefore, Plaintiffs' separate claims will not be aggregated for purposes of calculating the amount in controversy.

I. Amount in Controversy

The first question before the Court is whether Defendant has met his burden of showing by a preponderance of the evidence that the amount-in-controversy requirement has been met. In his Motion to Remove, Defendant attempts to rely upon the total value of the trust assets to meet the jurisdictional threshold. That is improper. "For actions seeking a declaratory judgment, courts measure the amount in controversy by 'the value of the object in the litigation.' *Northup Props., Inc. v. Chesapeake Appalachia, L.L.C.,* 567 F.3d 767, 770 (6th Cir.2009) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977)). That is "[t]he value of the consequences

which may result from the litigation." *Freeland v. Liberty Mut. Fire Ins. Co.,* No. 10–3038, 2011 WL 338039, at *2 (6th Cir. Feb. 4, 2011) (quoting *Lodal, Inc. v. Home Ins. Co. of Ill.,* No. 95–2187, 1998 WL 393766, at *2 (6th Cir. June 12, 1998));" *Certain Underwriters at Lloyd's, London v. Alkabsh*, No. 09-2711, 2011 WL 938407, at *3 (W.D. Tenn. Mar. 15, 2011). Neither the corpus of the trusts nor their beneficial ownership is in controversy in this litigation. The injunctive relief requested in Plaintiffs' complaint consists of an accounting of the trusts and a declaration of the situs of the trusts. That relief, together with the request for fees and expenses, are the only claims that the Court will consider in determining whether the amount-in-controversy meets the jurisdictional minimum.

### A. Value of Accounting

Defendant has not met his burden of showing that the value of the requested accounting exceeds the jurisdictional threshold. The costs of complying with an injunction, in this case complying with plaintiffs' request for accounting of the trusts, may establish the amount in controversy. *See Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 181, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The question then is whether the cost of complying with the injunction should be determined from the perspective of the plaintiffs (which will generally be modest), from the perspective of the defendant (which will logically be much greater in many cases), or from either viewpoint. *See Olden v. LaFarge Corp.,* 383 F.3d 495, 502 (6th Cir.2004) (detailing the circuit split). The Sixth Circuit has described the landscape of this issue as a "jurisdiction morass" that it has continued to "sidestep." *Siding*, 754 F.3d 367, 372. Here, Defendant argues that the value of the accounting should be determined from his perspective, relying upon *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.* in which the Sixth Circuit affirmed a finding that the

amount of controversy was satisfied based on defendant's costs of complying with an injunction for accounting. 621 F.3d 554, 560 (6th Cir. 2010). Defendant attached a "Declaration of Lloyd De Vos" which he claims "establishes" the cost of the accountants engaged to undertake the accounting at $22,600 as of the filing of the notice of removal. (De Vos Decl. ¶ 2.) In addition to the $22,600, the Declaration claims that the twenty hours he has spent in connection with the accounting has amounted to $37,600. (*Id.*) Plaintiffs argue that Defendant's request for fees associated with the accounting are part of his counterclaim and thus should not be considered in determining the amount in controversy. They cite to *Chattanooga Fire & Police Pension Fund v. Wells Fargo Bank* in which the district court held that, rather than determining the value of a claim for an injunction (to compel a trustee to produce an accounting of a trust) through the lens of defendant's cost of compliance, it would "evaluate the injunction in terms of the economic value of the right that plaintiff seeks to protect, not the cost to the defendant." In coming to its decision, the district court acknowledged that whether the value of complying with an injunction should be determined from the perspective of the defendant or from the plaintiff is an open question in this Circuit. However, it noted that the Sixth Circuit has expressed a preference for the plaintiff's perspective, stating: "It is generally agreed in this circuit, that the amount in controversy should be determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.' " *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007) *quoting Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbro,* 129 Fed.Appx. 194, 196 (6th Cir.2005).

      This Court similarly does not see a reason to deviate from the stated preferences of the Sixth Circuit. While Defendant relies upon *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.* to support his argument that his cost of complying with the injunction to provide accounting

10

should control, that case is easily distinguished. In *Cleveland Housing*, the Sixth Circuit qualified its decision to evaluate the amount in controversy from defendant's perspective, stating that it relied on the defendant's valuation because plaintiff's argument that the abatement of nuisances on twenty-five parcels of abandoned property, involving, in part, the demolition of several properties and an overhaul of Deutsche Bank's future business practices, would amount to improvement valued at less than $75,000 was "patently absurd." Here, rather than an injunction to improve twenty-five residential parcels of land extensively and expensively, Plaintiffs request an injunction for accounting for just two trusts of unextraordinary value – a routine practice in trust administration. Plaintiffs' contention that this routine practice would fall under the jurisdictional minimum is not "patently absurd."

Defendant bears the burden of establishing the value of the accounting, including the economic value of the right to the plaintiffs. In his sur-reply, Defendant argues that the "'economic value' of the beneficiaries' rights in the Trusts valued at $2.8 million is 'significant' in this case." That argument does not engage with the question of the value of an accounting from the perspective of the Plaintiffs. As discussed above, the beneficiaries' rights to the trusts are not in controversy. And while it is apparent that the economic value of an accounting to the plaintiffs is not negligible, the value to Plaintiffs of a routine matter of trust administration is not necessarily equal to the cost to the Defendant.

Even assuming *arguendo* that the Court accepts Defendant's arguments and counts the cost of complying with the injunction to the defendant towards the calculation of the amount in controversy, the accounting costs for each trust would not be aggregated. Because Plaintiffs do not share a common interest in both trusts, the costs of the accounting for their respective trusts should be considered separately. Therefore, it can be inferred that the accounting costs for each

11

trust is less than the aggregate amount of $22,600 in "actual accounting costs" that Defendant presents.

### B. Plaintiff's Attorney's Fees, Costs, Expenses

Defendant has further failed to meet his burden of demonstrating that Plaintiffs' request for attorney's fees related to this matter satisfies the amount in controversy requirement. In their Complaint, Plaintiffs request that the court enter an order awarding them fees, expenses, and costs related to this litigation pursuant to Tenn. Code § 35-15-1004(a), which provides:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

The Sixth Circuit has affirmed the general principle of considering statutorily authorized attorney's fees for purposes of establishing jurisdiction. *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 377 (6th Cir. 2007) *citing Stokes v. Reeves,* 245 F.2d 700 (9th Cir.1957) (Where there is a state statute allowing attorneys' fees, it is applicable in diversity cases, and the amount claimed thereunder *may* be taken into account in determining whether the jurisdictional amount is involved) (emphasis added). Here, the statute upon which Plaintiffs rely clearly allows them to recoup attorney's fees. However, Defendant has not proven by a preponderance of the evidence, and with competent proof, that Plaintiffs' legal fees, even in connection with other the value of the accounting, will meet the jurisdictional minimum. Plaintiffs' counsel has filed a declaration affirming that, at the time that the Notice of Removal was filed, legal fees, costs, and expenses incurred by Petitioners totaled $37,129.05. (ECF No. 19-1.) Defendant notes that, since then, Plaintiffs have filed a Motion to Remand with attached memorandum, a declaration attesting to their legal fees, a motion for leave to file a reply, a five-page Reply brief, a second declaration attesting to legal fees, and "engaged in communications with counsel for Defendant and informal

mediation." Defendant argues that Plaintiffs will continue to incur legal fees in pursuing this action and that those legal fees will more likely than not surpass $75,000. Should the Court determine that Defendant has not met his burden of proving by a preponderance of the evidence that Plaintiffs' legal fees exceed $75,000, Defendant requests that this Court order Plaintiffs' counsel to submit "a third declaration showing Plaintiffs' legal fees and expenses incurred to the date of the declaration (billed, unbilled, and write-offs) together with an estimate of reasonably certain future legal fees." In support of this request, Defendant cites to an unreported Sixth Circuit case where the Court simply acknowledged that information on Plaintiffs' billing practices would be difficult to obtain by opposing counsel. In that case, the Court held that a conservative assessment of plaintiff's punitive and compensatory damages more likely than not exceeded the jurisdictional threshold even without considering attorneys' fees. *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 473 (6th Cir. 2019). The court did not compel plaintiff to provide billing records or to estimate future fees as Defendant requests. It just found that "it was difficult to believe" that plaintiff's attorneys would agree to a fee award less than $12,389.21 for three years' worth of work on plaintiff's behalf. *Id*. The inference that at least $12,3980.21 in legal fees would accrue after three years of intense litigation is far less speculative than Defendant's assertion that Plaintiffs will accrue more than $75,000 in legal fees when litigation has begun only recently and when Plaintiffs have declared that they have only spent $37,129.05, jointly, to date. Such a calculation is significantly more attenuated. Unlike the instant case, in *Heyman* and in *Williamson v. Aetna Life Ins. Co.*, plaintiffs requested compensatory, punitive, or actual damages that either did amount or very nearly amounted to the jurisdictional threshold – curtailing the amount of speculation that the Court had to engage in. *See Williamson*, 481 F.3d at 377. Here, the Court will decline to engage in the extensive guesswork involved in determining Plaintiffs' future legal fees, particularly where

13

Defendant argues that the bulk of the amount in controversy rests on attorney's fees. Defendant has not provided the Court with evidence regarding future fees nor has he provided a reasonable estimate of future costs, failing to meet his burden of proof. Defendant's request that the Court ask Plaintiffs' counsel to submit a third declaration of current and future legal fees, inexplicably including costs not accrued by Plaintiffs in the form of unbilled hours or write-offs, is an improper attempt to shift the burden of proof on Plaintiffs that the Court will not entertain.

The Court further notes that it is particularly problematic in this case for Defendant to use the attorney's fees likely accrued by Plaintiffs by responding to Defendant's own removal to federal court as the primary vehicle to get over the jurisdictional goal-line. The Seventh Circuit has held that "legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount 'in controversy' when the suit is filed." *Gardynski-Leschuk v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998). As the court stated, and this Court emphasizes, legal fees are avoidable. Plaintiffs' filed their Complaint primarily to obtain an accounting of their respective trusts and to declare the situs of the trusts. Defendant has now provided Plaintiffs with that information in its responsive pleadings, but the litigation has evolved past Plaintiffs' Complaint to center around Defendant's counterclaims, including for trustee fees of $787,514.23. As previously discussed, it is generally agreed in this circuit that the amount in controversy should be determined "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Buckeye Recyclers v. CHEP USA,* 228 F.Supp.2d 818, 821 (S.D.Ohio 2002); *see Pennsylvania R. Co. v. City of Girard,* 210 F.2d 437 (6th Cir.1954); *Goldsmith v. Sutherland,* 426 F.2d 1395, 1398 (6th Cir.1970); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3708 (3d ed.1998). A plaintiff is the "master of the claim" and can construct a complaint to allege an amount in controversy below the

jurisdictional amount. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). Finally, because Plaintiffs do not share a common and undivided interest in this case, their claims for attorney's fees should not be aggregated.

### C. Trustee Fees and Expenses

Defendant's trustee fees further do not contribute to meeting the jurisdictional minimum. Unlike attorney's fees, the Sixth Circuit has not weighed in on the issue of whether trustee fees incurred after removal may be included in the amount in controversy calculation. Also unlike Plaintiffs' claim for attorney's fees, Plaintiffs are not asking to be reimbursed for all future trustee fees and expenses. Rather, they are requesting that the court enter an order requiring Defendant to seek court review and approval of any fees, costs, and other expenses relating to this lawsuit prior to payment with trust funds pursuant to Tenn Code Ann § 35-15-709. Therefore, the fees themselves are not in controversy because this is simply another request for injunctive relief – to compel Defendant to seek court approval of fees. After Defendant requests review, the reviewing court could conceivably approve all or part of Defendant's fees and expenses. As discussed above, the controlling metric is the economic value of the rights Plaintiffs seek to protect from the perspective of the Plaintiffs. Here, Defendant does not attempt to quantify the value of this injunctive relief from the perspective of the Plaintiffs beyond citing to the value of both trusts, which, again, is inapposite in this case because the corpus of the trusts is not in controversy. Even if the Court were to consider the value from Defendant's perspective, focusing on his own costs, Defendant does not specify the amount of trustee fees accrued at the time of removal. Defendant's sole specific reference to his fees and costs in his responses to Plaintiffs' motion is to $15,000 expended in connection with complying with Plaintiffs' request for an accounting, which occurred post-removal. Defendant does not offer an appropriate measure of the object of the litigation in

this case – the value of the injunction to the Plaintiff.

  II. The *Princess Lida* Doctrine

In actions that are in rem or quasi in rem, if a state court first asserts jurisdiction over the property at issue in a claim subsequently filed in federal court, the state court may maintain and exercise its jurisdiction over that property to the exclusion of the federal court. *Princess Lida of Thurn & Taxis v. Thompson,* 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939); *Jacobs v. DeShelter,* 465 F.2d 840, 842–43 (6th Cir.1972) (quoting *Princess Lida,* 305 U.S. at 466, 59 S.Ct. 275); *Gillis v. Keystone Mut. Cas. Co.,* 172 F.2d 826, 829 (6th Cir.1949) (characterizing the doctrine as "well established"); *Cartwright v. Garner*, 751 F.3d 752, 758 (6th Cir. 2014). "This rule applies where the court first asserting jurisdiction needs some control over the property to resolve the case, *such as in cases involving trust administration*." *Cartwright*, 751 F.3d 752, 761 (quoting *Princess Lida*, 305 U.S. at 466, 59 S.Ct. 275) (emphasis added).

The first question in determining whether the *Princess Lida* doctrine applies in this case to deprive the federal court of jurisdiction is whether the instant federal action and the Tennessee state court actions are quasi in rem. There are currently two actions involving the Isaac Burton Tigrett, II Trust and the Augusta King Tigrett trust pending in Tennessee Chancery Court. Plaintiffs argue that the actions are clearly at least quasi in rem because the plaintiff in both cases seeks damages against the trusts. Further, if the plaintiff were to succeed on its claims, the Chancery Court would be required to exert control over the trust assets to provide relief. Plaintiffs supportively cite to *Cartwright v. Garner* which involved a dispute over whether an action alleging wrongful diversion of assets in trusts was quasi in rem or in personam. The Sixth Circuit determined that the action was quasi in rem based on two circumstances. First, it noted that plaintiff's claim that the value of the trust assets and his beneficial interest in them had been

16

diminished was a matter of trust administration. 751 F.3d 752, 762. Second, plaintiff sought recovery of trust assets. The Court reasoned that, "if plaintiff were successful in recovering trust assets that he claims were diminished as a consequence of defendants' conduct, the court would be required to exercise some control over the defendant partnerships and the trust in order to effectuate that remedy." *Id.*

Defendant argues that the *Princess Lida* doctrine is inapplicable to the instant case because the pending state claims (involving tortious interference and a lease dispute) and the federal claim (for accounting) are not directed at control over trust assets, which Defendant claims is a necessary condition for establishing that the suit is quasi in rem.

Plaintiffs have the better of the arguments. In evaluating the state actions, the Court at first glance notes that the Isaac Burton Tigrett, II Trust and the Augusta King Tigrett Trust are both parties to the state court actions, which suggests more explicitly than in *Cartwright* (where the Court determined that the action was quasi in rem despite the trusts themselves not being parties to the case) that the trusts are not incidental to the case – some aspect of their administration is in dispute, which plaintiff makes clear in its complaint. *1963 Jackson, Inc. v. Lloyd De Vos, et al.* (Docket No. 68355) consists of three claims against the trusts. First, a claim that the trusts wrongfully and intentionally breached a lease contract, resulting in damages; second, a claim for declaratory judgment against the trusts for wrongfully terminating plaintiff's lease; and third, a claim against Lloyd De Vos for tortious interference with a business relationship. Like the plaintiff in *Cartwright*, De Vos' presence as a party in the dispute is not supplementary to the trusts. Mr. De Vos is being sued, not in his personal capacity, but in his capacity as trustee of the trusts for administration decisions that he made on behalf of, and in name of, the trusts. Most compellingly, both state suits seek damages against the trusts, including a "monetary judgment…against…the

Trusts for liquidated, compensatory, punitive and any other damages….'"  Defendant claims that "to be in rem or quasi in rem, the action has to be directed at the trust assets themselves and require Court control of the assets."  Both requirements are met here.  As in *Cartwright*, should the plaintiff be successful in his claims against the trusts, the Court would be required to exert control over the trusts' assets to effectuate the remedy.  The state actions therefore are quasi in rem.  As to the federal action, the court likewise must have some control over trust assets to effectuate the remedies sought by Plaintiffs – fees, expenses, and costs pursuant to Tenn. Code § 35-15-1004(a) and approval of the trustee's legal fees, costs, and other expenses from trust assets.  Furthermore, the federal case is principally a trust administration case as contemplated by the *Princess Lida* decision.  *See* 305 U.S. at 466-468, 59 S. Ct. 275.  Much more than a suit for accounting, as Defendant claims, the instant federal suit focuses on key matters of trust administration including providing financial information relating to the trusts, ascertaining the situs of the trusts, and determining reasonable compensation for the trustee.  Accordingly, the federal action is likewise quasi in rem.

The second question in determining whether the *Princess Lida* doctrine applies to deprive this Court of federal jurisdiction is whether the Tennessee Chancery Court first exercised jurisdiction over the trusts pursuant to state law.  A review of the record resolves this question in the affirmative. At the time this matter was removed to federal court, the state matters were already pending since 2014 and 2016 respectively.  Because the Tennessee Chancery Court first exercised jurisdiction over the trusts and their administration in quasi in rem actions, the district court lacks subject matter jurisdiction in the instant case.

III. Attorney's Fees under 28 U.S.C. § 1447(c)

Plaintiffs ask for attorney's fees under 28 U.S.C. § 1447(c). The remand statute provides

18

that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Absent unusual circumstances," the Supreme Court instructs that fee awards are appropriate "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 136–37, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). The Sixth Circuit has similarly instructed that "an award of costs, including attorney fees, is inappropriate where the defendant's attempt to remove the action was 'fairly supportable,' or where there has not been at least some finding of fault with the defendant's decision to remove." *Bartholomew v. Town of Collierville*, 409 F.3d 684, 687 (6th Cir. 2005). Here, Defendant sought removal based on diversity jurisdiction. Defendant established that the parties themselves were diverse. The conflict between the parties revolved around the disputable issue of whether Defendant met his burden of establishing the amount in controversy to give this Court jurisdiction. While the Court rejected Defendant's arguments, it did not find that Defendant lacked an objectively reasonable basis for seeking removal. Therefore, the Court will decline to award attorney's fees.

## CONCLUSION

In the interest of comity and federalism, federal jurisdiction should be exercised only when it is clearly established, and any ambiguity regarding the scope of § 1446(b) should be resolved in favor of remand to the state courts. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999). Defendant has failed to meet his evidentiary burden demonstrating that the value of the injunction to perform an accounting, in combination with the value of the injunction for review of trustee fees and costs, and Plaintiffs' attorneys' fees, meet the minimum amount in controversy required for diversity jurisdiction. Further, even assuming that the amount in controversy requirement were met, this Court lacks subject matter jurisdiction over Plaintiffs'

19

claims pursuant to the *Princess Lida* doctrine.  Therefore, construing the removal statutes strictly, the Court determines that it lacks jurisdiction over this matter and **GRANTS** Plaintiffs' Motion to Remand to Tennessee Chancery Court.  Having concluded on the above bases that the Court lacks jurisdiction, it is not necessary to consider Plaintiffs' arguments regarding abstention and the probate exception doctrine.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: March 26, 2021.